613-15

NO. 12-14-00184-CR

IN THE
COURT OF CRIMINAL APPEALS
OF TEXAS

ORIGINAL

FILED IN
COURT OF CRIMINAL APPEALS
JUN 19 2015
Abel Acosta, Clerk

DEMETRIUS KELLUM
APPELLANT

v.

STATE of TEXAS
APPELLEE

RECEIVED IN
COURT OF CRIMINAL APPEALS
JUN 18 2015
Abel Acosta, Clerk

ON PETITION FOR DISCRETIONARY REVIEW FROM THE TWELFTH COURT OF APPEALS NO. 12-14-00184-CR AFFIRMING THE JUDGMENT AND SENTENCE IN THE 14th District COURT OF Smith COUNTY, TEXAS CAUSE NO. 114-1918-13

APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

ORAL ARGUMENT REQUESTED

DEMETRIUS R KELLUM
APPELLANT, PRO SE
TDC-ID# 1936979
McConnell Unit
3001 Emily DR
BEEVILLE, TX 78102-8583

# TABLE of CONTENTS

TABLE of CONTENTS.....................2
INDEX of AUTHORITIES.....................3
STATEMENT REGARDING ORAL ARGUMENT.....................5
STATEMENT of THE CASE.....................5
STATEMENT of PROCEDURAL History.....................4
GROUNDS for REVIEW.....................4
GROUNDS for REVIEW NUMBER ONE.....................4
STATEMENT of FACTS.....................6

I. THE COURT of APPEALS ERRED BY Ruling THAT THE EVIDENCE IS sufficient TO SUPPORT THE JURY'S Implicit REJECTION OF APPELLANT'S SELF-defense claim.

## REASON for REVIEW of GROUND NUMBER ONE

THE COURT of APPEALS HAS DECIDED AN IMPORTANT QUESTION of STATE AND FEDERAL LAW IN A WAY THAT conflicts with THE APPLICABLE DECISIONS of THE COURTS of CRIMINAL APPEALS. BROOKS V. STATE (TEX. CRIM. APP) 323 S.W. 3d 893

MALIK V. STATE (TEX. CRIM. APP.) 953 S.W. 2d 234

Roberts V. STATE (TEX, CRIM. APP.) 273 S.W. 3d

SANDERS V. STATE (TEX. CRIM. APP) 119 S.W. 3d 818

SAXTON V. STATE (TEX. CRIM. APP) 804 S.W. 2d 910

ARGUMENT AND AUTHORITIES—7
CONCLUSION AND PRAYER.....................8
CERTIFICATE of SERVICE.....................8
CERTIFICATE of COMPLIANCE.....................8

# INDEX of AUTHORITIES

## CASES

UNITED STATES SUPREME COURT:

JACKSON V. VIRGINIA,
443 U.S. 307, 99 S.C.t. 2781, 61 L.Ed.2d 560 1979)----------7

TEXAS COURT of CRIMINAL APPEALS:

BROOKS V. STATE,
323 S.W.3d 893 (TEX. CRIM. APP. 2010)------------------7

CONNER V. STATE,
67 S.W.3d 192 (TEX. CRIM. APP. 2001)----------------7

GOLLIHAR V. STATE,
46 S.W.3d 243 (TEX. CRIM. APP. 2001)----------------7

HOOPER V. STATE,
214 S.W.3d (TEX. CRIM. APP. 2007)------------------7

MALIK V. STATE,
953 S.W.2d 234 (TEX. CRIM. APP. 1997)---------------7

ROBERTS V. STATE,
273 S.W.3d (TEX. CRIM. APP. 2008)------------------7

SANDERS V. STATE, 119 S.W.3d 818 (TEX. CRIM. APP. 2003)--------7

SAXTON V. STATE, 804 S.W.2d 910 (TEX. CRIM. APP. 1991)-----7

ZULIANAI V. STATE, 97 S.W.3d 589 (TEX. CRIM. APP. 2003)-----7

TEXAS COURT of APPEALS:

ALLEN V. STATE,
249 S.W.3d 680 (TEX. APP.————————AUSTIN 2008)-------7

STATUTES:

TEX. PEN. CODE § 9.31--------------------7

TEX. PEN. CODE § 9.32--------------------7

## STATEMENT OF PROCEDURAL HISTORY

THE COURT OF APPEALS FOR THE TWELFTH DISTRICT OF TEXAS RENDERED ITS MEMORANDUM OPINION AND JUDGMENT BY PANEL ON APRIL 30, 2015, A MOTION FOR REHEARING WAS NOT FILED.

## GROUND FOR REVIEW NUMBER ONE

THE COURT OF APPEALS ERRED BY RULING THAT THE EVIDENCE IS SUFFICIENT TO SUPPORT THE JURY'S IMPLICIT REJECTION OF APPELLANT'S SELF-DEFENSE CLAIM.

## REASON FOR REVIEW OF GROUND NUMBER ONE

THE COURT OF APPEALS HAS DECIDED AN IMPORTANT QUESTION OF STATE AND FEDERAL LAW IN A WAY THAT CONFLICTS WITH THE APPLICABLE DECISIONS OF THE COURT OF CRIMINAL APPEALS. BROOKS V. STATE (TEX. CRIM. APP) 323 S.W. 3d 893

MALIK V. STATE (TEX. CRIM. APP) 953 S.W. 2d 234

ROBERTS V. STATE (TEX. CRIM. APP) 273 S.W. 3d

SANDERS V. STATE (TEX. CRIM. APP.) 119 S.W. 3d 818

SAXTON V. STATE (TEX. CRIM. APP) 804 S.W. 2d 910

(4)

TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL APPEALS:

COME NOW DEMETRIUS KELLUM, THE APPELLANT IN THE ABOVE STYLED CAUSE, AND PURSUANT TO Rule 68 THE TEXAS Rule OF APPELLATE PROCEDURE, FILE THIS, HIS PETITION FOR DISCRETIONARY REVIEW. IN SUPPORT OF THIS PETITION, HE WOULD RESPECTFULLY SHOW THE COURT THE following:

## STATEMENT REGARDING ORAL ARGUMENT

APPELLANT RESPECTFULLY REQUEST LEAVE, PURSUANT TO TEX. R. APP. P. 68 TO MAKE ORAL ARGUMENT TO THIS HONORABLE COURT. APPELLANT BELIEVES THAT ORAL ARGUMENT IS NECESSARY FOR A FULL AND COMPLETE UNDERSTANDING OF THE FACTS AND CONSTITUTIONAL ISSUES PRESENTED HEREIN. THIS REQUEST IS MADE SO THAT JUSTICE MAY BE DONE.

## STATEMENT OF THE CASE

DEMETRIUS KELLUM APPEALS HIS CONVICTION AND SENTENCE FOR THE OFFENSE OF AGGRAVATED ASSAULT. (ICR 88). MR. KELLUM WAS INDICTED FOR THIS OFFENSE IN DECEMBER IN THE 114th DISTRICT COURT OF SMITH COUNTY, TEXAS. (ICR 1). TO THIS CHARGE HE ENTERED A PLEA OF "NOT GUILTY" AND PROCEEDED TO TRIAL BY JURY. (ICR 88). IN JUNE OF 2014, A GUILTY VERDICT WAS RETURNED AGAINST HIM AND SENTENCE IMPOSED AT CONFINEMENT FOR LIFE. (ICR 89). SENTENCE WAS PRONOUNCED ON 5 JUNE AND NOTICE OF APPEAL THEN TIMELY FILED. (ICR 89. 95).

(5)

## STATEMENT of facts PERTINENT TO GROUD for REVIEW NUMBER ONE

ON A fall EVENING IN NOVEMBER of 2013, APPELLANT. DEMETRIUS KELLUM WAS AT HOME with HIS GIRLFRIEND RUBY LOWERIE(IXRR123 THEY WERE JOINED BY DIANE MARVELS, A FRIEND OF MS. LOWERIE WHO ALSO BROUGHT HER BOYFRIEND WINDELL WILLIAMS(IXRR56)

MR. WILLIAMS ARRIVED AT THE GATHERING ALREADY HAVING HAD A fAIR AMOUNT OF ALCOHOL AND HE CONTINUED to dRINK wHile AT APPELLANT'S HOME.(IXRR 56.59)

THE GROUP decided TO GO TO A local club called BANANATREE AT THE club WILLIAMS AGAIN CONTINUED TO DRINK(IXRR 60,63) WILLIAMS INTOXICATED BEHAVIOR DREW THE ATTENTION OF CLUB STAFF WHO ATTEMPTED TO ENlist the HELP OF MR. KELLUM IN CALMING WILLIAMS DOWN(IXRR 65,132),171). MR. KELLUM WAS UNSUCCESSFUL AND MR. WILLIAMS WAS FORCEFULLY REMOVED FROM THE club FOR misbEHAVING and "FIGHTING with EVERYbody" (IXRR 131,171).

HAVING COME IN THE SAME CAR THE WHOIE GROUP left after WILLIAMS WAS KICKED OUT(IXRR 137-38). UNFORTUNATELY, WILLIAMS WAS AGGRESSIVE IN HIS BEHAVIOR IN THE CAR THIS TIME dIRECTING IT AT MR. KELLUM.(Id). THEY HAD NOT dRIVEN FAR WHEN, AT A STOP SIGN Both MR. KELLUM AND WILLIAMS EXITED THE VEHICLE AND STARTED FIGHTING(IXRR 138-39) THE FIGHT didn't LAST LONG AND Both MEN RETURNED TO THE VEHICLE.(IXRR 80)

WILLIAMS CONTINUED to ACT IN AN IRATE MANNER AS THEY dROVE HOME AND HE ACTUALLY ATTEMPTED TO CONTINUE THE FIGHT AFTER MR. KELLUM ARRIVED HOME, EXITED THE VEHICLE, AND WENT INTO HIS HOUSE(IXRR 168).

After Williams calmed down, Ms. Marvels notice some several cuts that williams received in the fight at Kellum's House (IXRR83).

Although william's initially did not want the involement of law enforcement and reiterated at trial that the underlying situation was very much one of mutual combat MR. Kellum was nonetheless charged with the offense of aggravated assault by stabbing william, windell with a razor and a knife based on the incident.(ICR1).

To this charge Kellum entered a plea of "Not Guilty" and proceeded to trial by jury.(ICR88). In June of 2014 a Guilty verdict was returned against him and sentence imposed at confinement for Life(ICR89). Sentence was pronounced on 5 June and Notice of Appeal then timely filed (ICR 89,95.).

(6)

## ARGUMENT AND AUTHORITIES
## IN SUPPORT OF GROUND FOR REVIEW
## NUMBER ONE

IN THE CASE AT BAR, WHERE THE OVERWHELMING EVIDENCE AT TRIAL, EVEN WHEN VIEWED IN THE LIGHT MOST FAVORABLE TO THE STATE, LEADS TO THE CONCLUSION THAT A defendant HAS ACTED IN SELF-DEFENSE, A GUILTY VERDICT IS, NECESSARILY BASED ON LEGALLY INSUFFICIENT EVIDENCE AND, due PROCESS REQUIRES THAT AN APPELLATE COURT REVERSE THE JUDGMENT of CONVICTION AND RENDER A JUDGMENT of ACQUITTAL. THE TEXAS LAW PERMITS A PERSON TO USE FORCE AGAINST ANOTHER WHEN IT IS REASONABLY NECESSARY TO do SO TO PROTECT THE PERSON'S HOME AND PROPERTY, TEX. PEN. CODE § 9.31. THIS INCLUDES THE USE of deadly FORCE WHEN PERMISSIBLE. TEX. PEN. CODE § 9.32. BECAUSE THE RECORD IN THIS CASE ESTABLISHES THAT APPELLANT ACTED IN ACCORDANCE WITH HIS LEGAL RIGHT of SELF-DEFENSE, THE JURY ERRED IN REJECTING HIS CLAIM of SELF-DEFENSE AND THE CONVICTION RETURNED REST ON LEGALLY INSUFFICIENT EVIDENCE.

IN THE CASE AT BAR, A VERDICT FINDING A defendant to be GUILTY of A CRIMINAL OFFENSE CARRIES with it AN implicit FINDING AGAINST ANY DEFENSIVE ISSUES RAISED. ZULIANI V. STATE, 97 S.W. 3d 589, 594 (TEX. CRIM. APP. 2003). WHEN A defendant CHALLENGES SUCH A REJECTION of HIS CLAIM of SELF-DEFENSE, AN APPELLATE COURT LOOKS TO WHETHER, AFTER VIEWING THE RECORD IN THE LIGHT MOST FAVORABLE TO THE PROSECUTION, ANY RATIONAL TRIER of FACT COULD HAVE FOUND AGAINST THE defendant ON THE ISSUE of SELF-DEFENSE beyond A REASONABLE doubt. SAXTON V. STATE, 804 S.W. 2d 910, 913 (TEX. CRIM. APP. 1991).

While this review considers the quality of the evidence produced, it also defers to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." (HOOPER V. STATE, 214 S.W.3d 9. 13 (Tex. Crim. App. 2007)(citing JACKSON V. VIRGINIA, 443. U.S. 307, 319. 99 S.ct. 2781. 61 L. Ed. 2d 560 (1979).

Such challenges are made by considering the evidence presented against a hypothetically correct jury charge MALIK V. STATE, 953 S.W.2d 234. 240 (Tex. Crim. App. (1997). A hypothetically correct jury charge is one that "set out" the law, is authorized by the indictment, does not unnecessarily increase the STATE's theories of liability, and adequately describes the particular offense for which the defendant was tried." Id. at 240. In making this review, a court should consider the entirety of the evidence to determine whether any rational trier of fact could have found against the defendant on the issue of self-defense beyond a reasonable doubt. CONNER V. STATE, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001).

Evidentiary Summary

In the case at bar, there were essentially four potential witnesses to the alleged aggravated assault: Diane Marvels, Ruby Lowerie, Windell Williams, and Kellum Importantly, all who testified gave similar testimony regarding the mutal combat nature of the incident (IX RR 70.-86, 138-39: XRR 37, 44. 47).

<u>DIANE MARVELS:</u> THE GIRLFRIEND OF THE ALLEGED VICTIM IN THIS CASE, WAS THE FIRST TO TESTIFY. (IXRR51). SHE TESTIFIED ON THE DATE OF THIS INCIDENT SHE AND HER BOYFRIEND WENT TO APPELLANT'S AND RUBY LOWERIE HOME (IXRR56). MR. WILLIAMS THE ALLEGED VICTIM IN THE CASE MET APPELLANT THROUGH DIANE(IXRR59). SHE TESTIFIED THAT HER, WILLIAMS WERE DRINKING BEFORE THEY GOT TO APPELLANT'S HOME, AND ~~WILLIAMS~~ AMOUNT VARIED BY EACH WITNESS.(IXRR56). THEY CONTINUED TO DRINK(IXRR59). SHE TESTIFIED HOW THEY DECIDED TO GO TO A LOCAL CLUB CALLED BANANA TREE (IXRR60). AND HOW THEY HAD MORE ALCOHOL WHILE AT THE CLUB(IXRR63). SHE THEN TESTIFIED HOW WILLIAM'S BEHAVIOR GOT HIM KICKED-OUT THE CLUB(IXRR65). AND HOW WE HAD TO LEAVE BECAUSE OF WILLIAM'S IRATE BEHAVIOR. (IXRR65). SHE TESTIFIED THAT A FIGHT BEGAN AT THE STOP SIGN(IXRR70). SHE WAS UNABLE TO RECALL WHO GOT OUT FIRST (IXRR74-76). SHE TESTIFIED THAT SHE ONLY REMEBER AT ONE POINT, MR. KELLUM WAS ON TOP OF MR. WILLIAMS.(IXRR77-78). AND A MAN HAPPEN TO BREAK THE FIGHT UP, THAT WAS IN THE AREA (IXRR79). SHE WAS ABLE TO ADD THAT ONCE AT APPELLANT'S HOME THOUGH WILLIAMS PURSUED MR. KELLUM IN AN ATTEMPT TO CONTINUE THE FIGHT(IXRR81). WHEN MR. WILLIAMS RETURNED TO THE CAR, IT WAS ONLY THEN THAT MS. MARVELS NOTICED THE CUTS ON MR. WILLIAMS(IXRR83). SHE TESTIFIED THAT WILLIAMS BEHAVING AS THOUGH HE HAD HAD "TOO MUCH TO DRINK"(IXRR46,99). ADDITIONALLY SHE TESTIFIED THAT MR. KELLUM ATTEMPTED TO ABANDON THE FIGHT WHILE WILLIAMS SOUGHT TO CONTINUE IT (IXRR109). IN MS. MARVELS TESTIMONY, MARVELS WAS ASKED "DID SHE SEE APPELLANT MR. KELLUM WITH A WEAPON AT THE STOP SIGN" SHE SAID NO."

(7)

<u>Ruby Lowerie</u>: Appellants Girlfriend in the case at Bar, was second to testify, Her Testimony was similar to that of Ms. Maruels but Ms. Lowerie was able to add that Part of what had instigated Mr. Williams Anger at Appellant was Mr. Kellum's Attempts to Get Mr. Williams to behave better while the Group was at the club. (IXRR 131). Moreover, unlike Ms. Maruels, Ms. Lowerie had been Present when Mr. Williams was Removed from the club for "Fighting with Everybody". (IXRR 171). She also Testified Appellant Tryed to calm Williams Down and Relax. (IXRR 132).

She testified it was Williams while in the car started calling Appellant "Bitch, Hoe, ETC". (IXRR 136) that Mr. Kellum was Remained calm. (IXRR 137-38). According to Ms. Lowerie it was Williams who then first exited the car at the stop sign and open Appellant's door so He Pull Mr. Kellum out of the car and Attack Him. (IXRR 138-39, 165). Like Ms. Maruels Ms. Lowerie Reiterated that Williams was Intoxicated, and only one Kicked-out the club. (IXRR 153, 159). She noted once more it was Mr. Williams who when Appellant Attempted to leave the Group and Enter His Home continued to try and instigate Another Physical altercation (IXRR 168). She was also asked at Trial Did she see Appellant with a Weapon at the stop sign? She said No".

## Windell Williams:

Began his testimony by conceding that he had been drinking throughout the day of the incident. (X RR 26). In fact, he testified that he could not remember parts of that evening because of the amount of alcohol he had consumed (XRR 33-34). Specifically, he did not remember any argument at the Banana Tree with Mr. Kellum, being asked to leave the club, or what the reason was that he had been removed from the club. (IX RR 34, 50). He claim to be able to remember that it was Mr. Kellum who had begun the initial argument. (XRR 37).

"At the stop sign he don't recall [who got out first]. I mean, you know, when someone is in an altercation and doors open, I don't know who opened those doors first. I Dont know who punched – I just know we had an altercation at the stop sign. We both got out of the car and we both had an altercation, two men; I know that." (X RR 37).

Williams testified he didn't want anything to do with the case, stated "Thats why I didn't press charges" and ask the trial judge if he could plea the 5th.

Williams was the primary aggressor though is the only reasonable deduction from the fact that all parties testified that it was Mr. Williams, tryed to continue the altercation, who pursued Mr. Kellum after appellant entered his own home (IX RR 81, 168).

When later asked by law enforcement about the assault williams initially denied knowing who had assaulted him. (X RR 47, 121). Moreover, at worst, he testified that appellant had no weapon nor did he get stabbed at the stop sign.

(6)

"THE COURT OF APPEALS HAS DECIDED AN IMPORTANT QUESTION OF STATE AND FEDERAL LAW THAT CONFLICTS WITH THE APPLICABLE DECISIONS OF COURT OF CRIMINAL APPEALS".

THUS EVEN IN THE LIGHT MOST FAVORABLE TO THE VERDICT, THE EVIDENCE IS LEGALLY INSUFFICIENT TO SUPPORT THE CONCLUSION THAT APPELLANT ACTED IN ANY WAY OTHER THAN IN SELF-DEFENCE, SEE SANDERS V. STATE, 119 S.W.3d 818, 820 (TEX. CRIM. APP. 2003).

[STANDARD OF REVIEW; BUT SEE BROOKS V. STATE, 323 S.W.3d 893, 899 (TEX. CRIM. APP. 2010). AN APPELLATE COURT WILL NOT REWEIGH EVIDENCE BUT WILL DEFER TO THE JURY'S RESOLUTION OF CONFLICTS IN THE SAME).

(1) THE RECORD REFLECTS THAT IN CAUSE NUMBER 114-1918-13 A JURY CONVICTED APPELLANT OF STABBING WINDELL WILLIAMS WITH (A RAZOR AND A KNIFE) WITH LIFE THREATING INJURIES.

(2) IN COURT OF APPEALS MEMORANDUM OPINION, THAT APPELLANT STABBED VICTIM AT A STOPSIGN DURING A FIGHT AFTER A CLUB, HOWEVER, VICTIM TESTIFIED THAT "HE NEVER SEEN APPELLANT WITH A WEAPON" AND MADE FALSE REPORT TO LAW ENFORCEMENT THAT "HE DIDN'T KNOW WHO ASSAULTED HIM".

(3) WHEN VICTIM RETURNED TO THE VEHICLE NEVER MADE ANY CLEAR REFERENCE TO DIANE MARVELS (NOR) RUBY LOWERIE, THAT HE WAS BLEEDING TO DEATH OR THAT HE WAS STABBED". AND ALL FOUR TESTIFIED EITHER ONE SEEN A WEAPON ON THE NIGHT OF THE INCIDENT, ALTHOUGH WENT TO APPELLANT'S HOME, TO START ANOTHER FIGHT, WHILE APPELLANT ATTEMPTED TO ENTER HIS HOME.

(4) THE VICTIM GIRLFRIEND DIANE MARVELS TESTIFIED THAT AFTER LEAVEN APPELLANT'S HOME, ASKED TO BE DROPED OFF AT SOME APARTMENT COMPLEX AND NOT THE HOSPITAL" CONTRADICTING THE STATES CONCLUSION THAT APPELLANT STABB VICTIM AT THE STOPSIGN. AND WAS SUFFERING FROM LIFE THREATING INJURIES").

The court of criminal appeals has held that "Due process requires the prosecution to prove beyond a reasonable doubt every fact necessary to constitute the offense alleged." Robert V. State 273 S.W. 3d 322. 329 (Tex. Crim. App. 2008)

The role of an appellate court is to safeguard this due process right. Allen V. State, 249 S.W.3d 680, 704 (Tex. App—Austin 2008, No Pet.)

Recognizing as fundamental the right to protect one's person, the Texas Legislature has codified the right to self-defense against an aggressor's use of force so long as the actor did not provoke the initial conduct and was not himself otherwise engaged in criminal activity. Tex. Pen. Code § 9.31(A)(2)(3). This description exactly fits appellant's position at the time of the underlying altercation.

Saxton V. State, 804 S.W. 2d 910, 912 (Tex. Crim. App. 1991) [F]or an appellate court to find as a matter of law that the defendant acted in self-defense, the evidence must be uncontradicted and no issue thereon presented for the [factfinder's] determination"). (citing Gollihar V. State, 46 S.W. 3d 243, 245-46 (Tex. Crim. App. 2001). Acting in this capacity, because the record before the court fails to establish a basis from which the jury should have reasonably rejected appellant's claim of self-defense, the court should reverse the judgment before it and render a judgment of acquittal.

When addressing the appellants argument that the court of appeals reversibly erred in determining whether appellant was deprived of a fair and impartial trial, courts look at two pronged test, A reviewing court initially determines if error exists, If error exists, a reviewing court

THEN EVALUATES the Harm CAUSED by the ERROR. THE dEGREE of HARM REQUIRED FOR REVERSAL dEPENDS ON WHETHER that ERROR WAS PRESERVED IN THE TRIAL COURT. WHEN ERROR IS PRESERVED iN the TRIAL COURT by TIMELY OBJECTION, THE RECORD MUST SHOW ONLY ("SOME HARM").

APPELLANT BEING IN POSSESSION of A "RED KNIFE" WHEN TYLER POLICE OFFICERS SEARCHED APPELLANT MUST AMOUNT TO MORE THAN MERE CONJECTURE. PROOF that AMOUNTS to ONLY A STRONG SUSPICION OR MERE PRObability of GUILT IS INSUFFICIENT to SUSTAIN A CONVICTION. "IF CIRCUMSTANTIAL EVIDENCE PROVIDES NO MORE THAN SUSPICION, THE JURY IS NOT PERMITTED to REACH A SPECULATIVE CONCLUSION." THIS HOLDING by THE COURT of APPEALS FAILED to ADDRESSES THIS COURT'S DECISIONS:

THE JURY WAS GIVEN NO DIRECTION TO REFERENCE THE dEFINITION (RAZOR AND A KNIFE) THUS THEY WERE COMPLETELY IN the dARK AS TO HOW TO APPLY it TO the FACTS of THE CASE. THE LANGUAGE "STABBING WITH A RAZOR AND A KNIFE" IS INSUFFICIENT APPLICATION LANGUAGE.")). SUBSTANTIALLY LOWERED the STATES bURDEN, AND ALLOWED THE APPELLANT TO BE CONVICTED. THE FACTS of THE INSTANT CASE WAS ERROR AND RESULTED IN HARM. THIS COURT SHOULD UNQUESTIONABLY GRANT THIS PETITION AND PROVIDE GUIDANCE TO THE LOWER COURTS of APPEALS AND TRIAL COURTS ON THIS ISSUE:

## PRAYER

WHEREFORE, PREMISES CONSIDERED, THE APPELLANT RESPECTFULLY REQUEST THAT THIS HONORABLE COURT GRANT HIS PETITION FOR DISCRETIONARY REVIEW AND, AFTER CONSIDERING THE GROUNDS FOR REVIEW RAISIED HEREIN, REVERSE THE JUDGMENT OF THE COURT OF APPEALS AND REMAND THIS CAUSE FOR A NEW TRIAL.

*Demetrius R Kellum*
APPELLANT, PRO SE

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT A TRUE AND CORRECT COPY OF THE FORGOING APPELLANT'S PETITION FOR DISCRETIONARY REVIEW WAS DELIVERED TO THE COURT OF CRIMINAL APPEALS OF TEXAS, P.O. BOX 12308, CAPITOL STATION, AUSTIN, TEXAS 78711 ON THE __15th__ DAY OF ____JUNE____, 20__15__.

*Demetrius R Kellum*

## CERTIFICATE OF COMPLIANCE

THE BRIEF COMPLIES WITH RULE 9.4 OF THE TEXAS RULES OF APPELLATE PROCEDURE BECAUSE THE BRIEF CONTAINS CAPTION, IDENTITY OF PARTIES STATEMENT REGARDING ORAL ARGUMENTS, TABLE OF CONTENTS, INDEX OF AUTHORITIES, STATEMENT OF THE CASE, STATEMENT OF ISSUES PRESENTED, STATEMENT OF JURIDICTION, STATEMENT OF PROCEDURAL SIGNATURE, PROOF OF SERVICE, CERTIFICATION, CERTIFICATE OF COMPLIANCE, AND APPENDIX:

(8)

RECEIVED IN
COURT OF CRIMINAL APPEALS

JUN 18 2015

Abel Acosta, Clerk



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

### APRIL 30, 2015

### NO. 12-14-00184-CR

**DEMETRIUS KELLUM,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 114th District Court
of Smith County, Texas (Tr.Ct.No. 114-1918-13)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that the decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

"The requirements of Article 21.02 are that the offense must be set fourth in plain and Intelligible Language")

# NO. 12-14-00184-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *DEMETRIUS KELLUM,*<br>*APPELLANT* | § | *APPEAL FROM THE 114TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Demetrius Kellum appeals his conviction for aggravated assault. In one issue, Appellant contends that the evidence is legally insufficient to support the jury's implied rejection of his self-defense claim. We affirm.

## BACKGROUND

Appellant and his girlfriend, Ruby Lowrie, were having drinks with Diane Marvels and her boyfriend, Windell Williams, when the two couples decided to go to a club. While they were in the club, Williams was involved in a confrontation. As a result, Williams was either asked to leave by club personnel or decided to leave voluntarily. Because they had traveled to the club in Marvels's vehicle, they all left together.

Marvels began driving everyone back to Appellant and Lowrie's home. Appellant was unhappy that Williams's behavior caused everyone to leave the club early, and they engaged in a verbal altercation. When Marvels stopped the vehicle at a stop sign, Appellant and Williams exited the vehicle and began fighting. During the fight, Appellant cut Williams several times with some type of sharp-edged weapon such as a knife or razor. At that point, Appellant and Williams stopped fighting and returned to the vehicle.

When the group reached Appellant and Lowrie's home, Williams again exited the vehicle, and he and Appellant engaged in another verbal altercation. Marvels and Lowrie were able to defuse the argument without any additional physical combat. Marvels and Williams then left.

Appellant severely injured Williams during the fight, and Williams eventually sought medical attention at Trinity Mother Frances Hospital in Tyler. His treating physician, Dr. Sean Denham, treated him for multiple lacerations. The two most concerning injuries Williams sustained were a laceration under his chin and a laceration to the left abdomen.

After returning from the club and the fight, Appellant went to a friend's house. The Tyler Police Department officers investigating the incident wanted to speak with Appellant. After being given the address of Appellant's friend, several Tyler police officers went to make contact with Appellant. When they knocked at the front door, Appellant tried to leave the premises through the back exit. However, a police officer stationed at the back of the premises apprehended Appellant. The officers then searched Appellant and found him in possession of a red knife.

Appellant was arrested and indicted for the aggravated assault of Williams, enhanced to the punishment level of a first degree felony due to Appellant's prior felony conviction. At trial, Appellant argued that he was not guilty because he acted only in self-defense. The jury found Appellant guilty of aggravated assault. Appellant had elected that the trial court assess punishment. The trial court sentenced Appellant to imprisonment for life, and this appeal followed.

## SUFFICIENCY OF THE EVIDENCE

In his sole issue, Appellant contends that the evidence is insufficient to support a finding beyond reasonable doubt that Appellant was not acting in self-defense. Specifically, Appellant argues that no rational factfinder could have concluded beyond a reasonable doubt that Appellant acted in any manner other than in self-defense.

### Standard of Review and Applicable Law

The due process guarantee of the Fourteenth Amendment requires that a conviction be supported by legally sufficient evidence. *See Jackson v. Virginia*, 443 U.S. 307, 315-16, 99 S. Ct. 2781, 2786-87, 61 L. Ed. 2d 560 (1979); *Brooks v. State*, 323 S.W.3d 893, 917 (Tex. Crim.

App. 2010). The issue of self-defense is a fact issue to be determined by the jury, and a jury's verdict of guilt is an implicit finding that it rejected a defendant's self-defense theory. *Saxton v. State*, 804 S.W.2d 910, 913-14 (Tex. Crim. App. 1991). Accordingly, the jury's implicit rejection of a defendant's self-defense theory must be supported by legally sufficient evidence. *Id.* at 914. In reviewing the sufficiency of the evidence to support the jury's rejection of self-defense, we examine all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense and also could have found against the defendant on the self-defense issue beyond a reasonable doubt. *Id.*

When a defendant raises self-defense, he bears the burden of producing some evidence to support his defense. *See Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003) (citing *Saxton*, 804 S.W.2d at 913–14). Once the defendant produces some evidence supporting his defense, the state then bears the burden of persuasion to "disprove the raised defense." *Id.* The burden of persuasion does not require the production of evidence; it requires only that the state prove its case beyond a reasonable doubt. *Id.* Moreover, "[d]efensive evidence which is merely consistent with the physical evidence at the scene of the alleged offense will not render the [s]tate's evidence insufficient since the credibility determination of such evidence is solely within the jury's province[,] and the jury is free to accept or reject the defensive evidence." *Saxton*, 804 S.W.2d at 914. When the evidence is conflicting, we generally defer to the weight the jury gave to the contradictory testimonial evidence. *See Bundy v. State*, 280 S.W.3d 425, 435 (Tex. App.—Fort Worth 2009, pet. ref'd) (finding evidence factually sufficient in face of contradictory testimonial evidence).

A person acts in self-defense in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect him from the other's use or attempted use of unlawful force. TEX. PENAL CODE ANN. § 9.31(a) (West 2011). As applicable here, a person uses deadly force in self-defense when and to the degree he believes deadly force is immediately necessary. *Id.* § 9.32(a)(2). A "reasonable belief" is that which "would be held by an ordinary and prudent man in the same circumstances as the actor." *Id.* § 1.07(a)(42) (West Supp. 2014).

## Application

Marvels, Lowrie, and Williams testified at trial. All three agreed that Appellant and Williams engaged in a physical altercation. However, they differed on some of the particulars that gave rise to the confrontation.

Marvels testified that Williams "had got put out" of the club and caused everyone to leave. Neither she nor Williams were upset that they were leaving the club, but according to Marvels, Appellant was upset. Appellant and Williams began arguing as they were getting into Marvels's vehicle. Shortly thereafter, she stopped at a stop sign, and both men exited the vehicle at the same time. Marvels was certain that each man got out of her vehicle of his own free will to fight. Marvels did not know who swung first, but she saw both men swinging at each other. She said they fell to the ground with Appellant on top of Williams. The fight quickly ended, and both men returned to her vehicle.

Lowrie testified that she saw Williams arguing with a bouncer in the club. She said that club personnel requested Appellant's assistance in calming Williams. She stated that Appellant's assistance was fruitless, and the group left the club. Lowrie did not know if Williams had been asked to leave or if everyone left voluntarily. She further stated that Williams was yelling at Appellant as they were leaving. As Marvels drove, both Williams and Appellant continued the argument. Lowrie further claimed that, when Marvels stopped at a stop sign, Williams jumped out of the vehicle, opened Appellant's door, and pulled Appellant out of the vehicle to fight. Appellant and Williams then fought. Lowrie also could not say who threw the first punch. But she agreed that the fight quickly ended, and both men returned to Marvels's vehicle.

Lowrie stated that Appellant would have been seriously injured if he had not defended himself. Lowrie further testified that she was not afraid of Williams. She then changed her testimony and stated that she was afraid of Williams, but she was "not worried about [him]." In her words, Lowrie continued to ride in Marvels's vehicle after the fight "[b]ecause I knew my husband was there, my future husband. That's why I wasn't afraid of [Williams]."

The State also presented evidence that Lowrie told one of the investigating officers on the morning after the incident that Appellant and Williams exited the vehicle at the same time. This evidence controverts her testimony at trial that Williams opened Appellant's door and pulled him out of the vehicle.

4

Williams testified that Appellant was upset that they had to leave the club early. He further stated that when Marvels stopped the vehicle at a stop sign, both Appellant and Williams exited the vehicle to fight. Williams claimed that although unstated, it was understood that Appellant and he were going to fight when the vehicle stopped. Williams further claimed that each opened his own door and voluntarily exited the vehicle. Williams and Appellant then began fighting, but Williams fell and noticed that he was bleeding. Williams did not see that Appellant had a weapon, but he knew "all the blood I'm seeing is not coming from nobody punching." He then realized that he had been cut, at which point the fight stopped. Williams testified that he believed Appellant cut him.

The State presented evidence that Williams sustained significant injuries during his physical altercation with Appellant. The State further presented evidence that Appellant sustained no injuries, or only slight injuries, during the altercation.

It was the province of the jury to determine which of this conflicting testimony to credit and which to reject. *See Bundy*, 280 S.W.3d at 435. From the testimony, the jury could have determined that (1) Appellant willingly engaged in a physical confrontation with Williams, (2) Appellant was armed with a razor or knife and Williams was unarmed, and (3) Appellant cut Williams with a razor or knife when the force was not immediately necessary to protect Appellant from Williams. *See Bradshaw v. State*, 320 S.W.2d 833, 834 (Tex. Crim. App. 1959) (holding evidence sufficient to support conviction where defendant cut unarmed combatant).

After viewing the evidence in the light most favorable to the verdict, we conclude that a rational jury could have found the essential elements of the offense and also could have found against Appellant on his self-defense issue beyond a reasonable doubt. *See Saxton*, 804 S.W.2d at 914. Therefore, we hold that the evidence is sufficient to support the jury's implicit rejection of Appellant's self-defense claim. *See id.* We overrule Appellant's sole issue.

## DISPOSITION

Having overruled Appellant's sole issue, we *affirm* the trial court's judgment.

**BRIAN HOYLE**
Justice

Opinion delivered April 30, 2015.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*
(DO NOT PUBLISH)

5